T.C. Memo. 2011-5

UNITED STATES TAX COURT

MARK HALLER ZILBERBERG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5823-09.                    Filed January 5, 2011.

     After P failed to file his 2004, 2005, and 2006 tax
returns, R determined deficiencies in his income tax and
additions to tax under secs. 6651(a)(1) and (2) and 6654(a),
I.R.C.  P contested the deficiencies and additions to tax
arguing he was entitled to a $5,000 moving expense deduction
and a $36,250 casualty loss deduction for his 2005 tax year.

     <u>Held</u>:  For his 2005 tax year, P is entitled to a moving
expense deduction of $3,000 and a casualty loss deduction of
$15,000.

     <u>Held</u>, <u>further</u>,  P is liable for the additions to tax
under secs. 6651(a)(1) and (2) and 6654(a), I.R.C.

Mark Haller Zilberberg, pro se.

<u>Kimberly A. Higgins</u> and <u>Kenneth A. Hochman</u>, for respondent.

## MEMORANDUM OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition for redetermination of respondent's determination in a notice of deficiency that petitioner owes income tax deficiencies and additions to tax for his 2004, 2005, and 2006 tax years.  The issues for determination are:

(1) Whether petitioner is entitled to a $5,000 deduction under section 217 for moving expenses allegedly incurred in 2005;[1]

(2) whether petitioner is entitled to a $36,250 deduction under section 165 for a casualty loss allegedly sustained in 2005;

(3) whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to file his 2004, 2005, and 2006 tax returns;

(4) whether petitioner is liable for additions to tax under section 6651(a)(2) for failure to pay his 2004, 2005, and 2006 taxes; and

(5) whether petitioner is liable for additions to tax under section 6654(a) for failure to make required 2005 and 2006 estimated tax payments.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated. The stipulated facts and accompanying exhibits are hereby incorporated by this reference. Petitioner resided in Florida at the time he filed his petition with this Court.

For his 2004, 2005, and 2006 tax years, petitioner received taxable income of $32,233, $35,951, and $55,985, respectively.[2] Petitioner did not file a Federal income tax return for 2004, 2005, or 2006. Therefore, respondent prepared substitutes for returns pursuant to section 6020(b) for petitioner's 2004, 2005, and 2006 tax years. On the basis of these substitutes for returns, respondent mailed to petitioner, on December 1, 2008, notices of deficiency for petitioner's 2004, 2005, and 2006 tax years, showing the following deficiencies, as well as additions to tax under sections 6651(a)(1) and (2), and for 2005 and 2006, 6654(a).

---

[2]Petitioner received taxable income from various sources including Walton Academy, the School District of Escambia County, the Monroe County School Board, the Agency for Workforce Innovation, Penco Inc., Florida Keys Community College, and the Social Security Administration.

Petitioner's 2004 gross income was $35,588, including a $6,709 Social Security payment of which only $3,354 is taxable. Petitioner's 2005 gross income was $37,339, including a $4,567 Social Security payment of which only $3,179 is taxable. Petitioner's 2006 gross income was $56,867, including a $5,879 Social Security payment of which only $4,997 is taxable.

Additions to Tax

| Tax Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
|---|---|---|---|---|
| 2004 | $3,284 | $738.90 | [1]$673.22 | --- |
| 2005 | 3,610 | 723.60 | [1]466.32 | $127.25 |
| 2006 | 8,128 | 1,791.22 | [1]676.68 | 375.84 |

[1]Sec. 6651(a)(2) provides for an addition to tax of 0.5 percent per month up to 25 percent for failure to pay the amount shown on a return.

Petitioner timely petitioned this Court. In his petition, petitioner alleged that he did not owe the deficiencies or additions to tax because his allowable losses, expenses, and deductions, specifically his travel expenses, theft losses, moving costs, and "losses due to acts of God/natural disasters", exceeded his taxable income.

Trial was held in Miami, Florida, on January 11, 2010. At trial petitioner elaborated on his statements in the petition, specifying that he thought he was entitled to a $5,000 deduction for moving expenses and a $36,250 deduction for a casualty loss. Both deductions pertain only to petitioner's 2005 tax year. For the claimed moving expenses deduction, petitioner testified that he was hired by the Monroe County School District as an alternative education and GED teacher beginning in July 2005. In order to take this position, petitioner claimed he moved from Okaloosa County, Florida, to Key West, Florida, paying "$5,000

for [his] materials, [his] collections, everything that [he] had to be packed and shipped to Key West".

For the claimed casualty loss deduction, petitioner testified that in 2005, after he moved to Key West, he "lived in water for four days" which got up as high as his chest as a result of Hurricane Wilma.  Key West was also affected by Hurricanes Katrina, Rita, and Dennis during 2005.  According to petitioner:  "All of [his] property not only was destroyed by the water, but there was a disease factor and everything was taken out to the street in dumpsters."[3]  In evidence presented to this Court, petitioner listed the items of property he alleges were lost or destroyed as a result of the hurricanes and an

---

[3]Petitioner alleges that he suffered from Hurricanes Katrina, Wilma, Rita, and Dennis, being "flooded from the east" and "flooded from the west".  Petitioner testified that "Key West was totally inundated.  The winds of the hurricanes ranged from 75 miles per hour to over 120 miles per hour".  Respondent, while stipulating that Key West was affected by some of the hurricanes, does not agree that all four hurricanes "struck" Key West.  This Court, without discussing the differences between "affected" and "struck" or determining which specific hurricane(s) damaged petitioner's property, realizes that the 2005 hurricane season caused damage across Florida and will take judicial notice that property in Key West, Florida, suffered damages in the 2005 hurricane season.  A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding, whether or not the notice is requested by the parties.  See Fed. R. Evid. 201(c), (f); see also United States v. Harris, 331 F.2d 600, 601 (6th Cir. 1964) (explaining that a court may take judicial notice sua sponte).  In general, the court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); see also Evans v. Commissioner, T.C. Memo. 2010-207.

approximate value for each such lost or destroyed item.[4]
According to petitioner's testimony, the total value of the
damaged or destroyed property was $34,000 but the amount claimed
on his Exhibit 10-P was $36,250. Petitioner reached $34,000
because of a computational error; therefore we treat his claimed
casualty loss deduction as being $36,250. Petitioner did not
provide any proof of his ownership of any of the items of listed
property, nor does he substantiate the cost basis or purchase
price of any of those items. Instead, at trial petitioner made a
sweeping statement that he paid for most of the property in cash
and what little documentation he did have of such purchases was
destroyed by the hurricanes. Apparently, no effort was made to
reconstruct the lost records other than the creation of
petitioner's Exhibit 10-P.

---

[4]On Exhibit 10-P petitioner listed the following: 1991
Nissan Maxima--$4,000; kayak with HP Johnson outboard motor--
$1,500; English Racer bicycle--$150; English Racer bicycle
(second)--$50; bedroom, living room, dining room furniture, and
other household furnishings and accessories--$4,000; computers,
monitors, printers, copier, fax machine--$3,500; three digital
Deckmate recorders--$300; two TVs, three radios, speakers, all
electronic equipment--$750; clothing and personal belongings--
$1,000; food--$500; Lee Manella paintings-$3,250; Dean Giola
paintings-$4,250; Hank Fleck paintings--$3,250; Sally Boswell
painting--$1,250; Livingston Roberts highwayman painting--$3,500;
assorted paintings--$2,000; book collection--$3,000. We note
that the claimed values for these items are significantly reduced
from the original amounts listed on petitioner's Exhibit 10-P
before they were crossed out and the new claimed values written
in by hand. Petitioner testified he did this to reflect his
original cost of each item rather than his estimate of its fair
market value when destroyed by the storms.

## Discussion

Petitioner argues that for his 2005 tax year he is entitled to: (1) A $5,000 moving expenses deduction and (2) a $36,250 casualty loss deduction.[5]

## I. Burden of Proof

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any claimed deduction.[6] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to identify each deduction they are claiming and show that they have met all requirements to keep books or records and otherwise to substantiate all claimed deductions. Sec. 6001; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Roberts v. Commissioner, 62 T.C. 834, 836 (1974); sec. 1.6001-1(a), Income Tax Regs.

---

[5]Petitioner stated in his petition that he intended to rely on travel expenses, theft losses, itemized deductions, moving costs, and "losses due to acts of God/natural disasters" in proving he did not owe the deficiencies or additions to tax because these losses, expenses, and deductions exceeded his taxable income. However, petitioner introduced evidence regarding only claimed deductions for his 2005 tax year of $5,000 for moving expenses and $36,250 for casualty losses. Petitioner failed to introduce any evidence about any expenses, losses, or deductions he incurred in either his 2004 or 2006 tax years, and therefore we deem petitioner to have conceded the deficiencies as to those years.

[6]Petitioner did not argue that sec. 7491(a) applied. He did not produce credible evidence with respect to all factual issues relevant to his liabilities for tax and did not argue or establish that he had met the requirements of sec. 7491(a)(2). Consequently, sec. 7491(a) does not apply here to shift the burden of proof to respondent.

If a taxpayer's records are lost or destroyed through circumstances beyond his control, the taxpayer may still substantiate the claimed deductions by use of other credible evidence.[7]  Lockett v. Commissioner, 306 Fed. Appx. 464, 466-467 (11th Cir. 2009), affg. T.C. Memo. 2008-5.  When a taxpayer establishes a deductible expense but is unable to substantiate the precise amount, the Court may approximate the amount that is deductible so long as the taxpayer presents sufficient evidence to establish a rational basis for making the estimate.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); Villarreal v. Commissioner, T.C. Memo. 1998-420.

II.  Whether Petitioner Is Entitled to a Moving Expense Deduction Under Section 217

Moving expenses were ordinarily considered nondeductible personal expenses before the enactment of section 217.  See Hughes v. Commissioner, 65 T.C. 566, 570 (1975); Jorman v. Commissioner, T.C. Memo. 1996-297.  However, section 217(a) allows taxpayers, subject to certain conditions, to deduct "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an

---

[7]Even though a taxpayer can use evidence other than books or records to substantiate claimed deductions, we are not bound to accept a taxpayer's unverified, undocumented testimony.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

employee or as a self-employed individual at a new principal place of work."[8]  Section 217(c), as relevant here, specifies the following two conditions that a taxpayer must satisfy in order to claim a moving expenses deduction:  First, the taxpayer's new principal place of work must be "at least 50 miles farther from his former residence than was his former principal place of work"; and second, "during the 12-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer [must be] a full-time employee, in such general location, during at least 39 weeks".

Petitioner offered sparse evidence regarding his claimed moving expenses deduction, testifying at trial only that he was hired by the Monroe County School District to begin teaching in July 2005 and that he paid $5,000 for "everything [he] had to be packed and shipped to Key West" from Okaloosa County, Florida.

Petitioner failed to prove that he was entitled to his claimed $5,000 section 217 moving expense deduction.  Petitioner failed to substantiate the alleged moving expenses with documentary evidence such as receipts, credit card statements, canceled checks, or even a written summary of his expenses. Petitioner testified that he paid to have things "packed and

---

[8]Sec. 217(b)(1) defines moving expenses as "the reasonable expenses--(A) of moving household goods and personal effects from the former residence to the new residence, and (B) of traveling (including lodging) from the former residence to the new place of residence."

shipped".  Yet petitioner never provided this Court with specific information such as the exact days he moved, whether he drove himself to Key West, or the name of the moving company.

However, if a taxpayer establishes a deductible expense but is unable to substantiate the precise amount, we may, after "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making", estimate the amount, provided we are convinced that the taxpayer incurred such an expense and we have a basis upon which to make an estimate.  Cohan v. Commissioner, supra at 543-544; Vanicek v. Commissioner, supra at 743.  We do not doubt that petitioner moved to Key West in order to begin his job with the Monroe County School District.  We shall not, however, allow petitioner a $5,000 moving expense deduction solely on the basis of his testimony.

Even though the facts do not justify a $5,000 moving expense deduction, we do determine, on the basis of petitioner's testimony and his list of personal property, that petitioner is entitled to a $3,000 moving expense deduction under section 217. In doing so, we recognize that even though petitioner failed to adequately substantiate his claimed $5,000 moving expense deduction, he had to have incurred expenses including the cost of the moving truck or U-Haul trailer, packing, movers, boxes, and gas in moving with at least most of the personal property listed

in his Exhibit 10-P to Key West.[9]  See <u>Cohan v. Commissioner</u>, <u>supra</u> at 543-544; see also <u>Clark v. Commissioner</u>, T.C. Memo. 1989-598 (allowing a $200 moving expense deduction when the taxpayer claimed $500 but provided no receipts), affd. without published opinion 951 F.2d 1258 (10th Cir. 1991).

III.  <u>Whether Petitioner Is Entitled to a Casualty Loss Deduction Under Section 165</u>

Section 165(a) allows as a deduction any loss sustained during a taxable year and not compensated for by insurance or otherwise.  Section 165(c) limits the allowance of losses in the case of individuals.  Section 165(c)(3) allows as a deduction to an individual certain losses commonly referred to as casualty losses.  A casualty loss is allowable to a taxpayer for a loss of property not connected with a trade or business or a transaction entered into for profit if the loss results from "fire, storm, shipwreck, or other casualty".  See <u>id.</u>  Pursuant to section 165(h), the casualty loss deduction is allowed only to the extent that the loss from each casualty exceeds $100 and to the extent that the net casualty loss for the taxable year "exceeds 10 percent of the adjusted gross income" for that taxable year.[10]

_____

[9]Key West is approximately 805 miles from Okaloosa County, Florida.

[10]The sec. 165(h) limitations do not apply to losses described in sec. 165(c)(3) and "(1) which arise in the Hurricane Katrina disaster area on or after August 25, 2005, and which are attributable to Hurricane Katrina, (2) which arise in the

The amount of the casualty loss allowed under section 165 is the lesser of:  (1) The fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty or (2) "The amount of the adjusted basis prescribed" in section 1.1011-1, Income Tax Regs., "for determining the loss from the sale or other disposition of the property involved."  Sec. 1.165-7(b)(1), Income Tax Regs.

The method of valuation for determining a casualty loss is set forth in section 1.165-7(a)(2)(i), Income Tax Regs., which provides as follows:

> In determining the amount of loss deductible under
> * * * [section 165], the fair market value of the property
> immediately before and immediately after the casualty shall
> generally be ascertained by competent appraisal.  This
> appraisal must recognize the effects of any general market
> decline affecting undamaged as well as damaged property
> which may occur simultaneously with the casualty, in order
> that any deduction under * * * [section 165] shall be
> limited to the actual loss resulting from damage to the
> property.

Physical damage to property caused by a hurricane is a casualty within the purview of section 165(c)(3).  See Lamphere v. Commissioner, 70 T.C. 391, 395 (1978) (holding that damage

---

Hurricane Rita disaster area on or after September 23, 2005, and which are attributable to Hurricane Rita, or (3) which arise in the Hurricane Wilma disaster area on or after October 23, 2005, and which are attributable to Hurricane Wilma."  Sec. 1400S(b). The entire State of Florida is included in both the Hurricane Katrina and Hurricane Wilma disaster areas.  See Rev. Proc. 2006-32, sec. 2, 2006-2 C.B. 61-62.

resulting from Hurricane Agnes was a casualty); see also sec. 1.165-7(b)(3), Example (2), Income Tax Regs.  Key West suffered damages because of the 2005 hurricane season.

However, petitioner has failed to fully substantiate the claimed $36,250 in losses.  In deciding whether a taxpayer has substantiated his deductions, we ordinarily look at the proof he offers in the form of documentation and testimony.  Obot v. Commissioner, T.C. Memo. 2005-195.  Petitioner argues that he is entitled to a casualty loss deduction of $36,250 for his 2005 tax year, stating at trial:

> The only item at issue * * * is what I lost during the four hurricanes that I suffered in Key West in 2005, during which I lost everything.  I walked out the hurricanes with my shirt on my back * * *.  I lived in water for four days. I lost everything in 60 plus years, and that is all that is at issue.[11]

Petitioner arrived at the $36,250 figure not by competent appraisal but by his own estimate of "what somebody would pick * * * [the destroyed property] up for in a drive sale on the street on the value I came up with".  Petitioner was not

---

[11]Petitioner's trial testimony included additional statements that emphasized the totality of his loss.  He testified that he lost "All [his] books, all [his] paintings, everything that [he had] collected, all [his] furniture, pineapple beds, everything was lost. * * * [He] lost [his] car". Later, petitioner claimed "[he] lost all bedroom, living room, dining room furniture, and all other house furnishings and accessories, computers, monitors, printers, copier, fax machines, three digital DEC made recorders, two TVs, three radios, speakers, all electronic equipment, all clothing and personal belongings, and all food, refrigerator, freezer, canned and stored, everything, zero".

consistent in the values he assigned to the property he claims
was destroyed. For example, at trial petitioner testified that
he lost a 1991 Nissan Maxima, a Hobie fishing kayak, and a
Johnson 5-horsepower motor to which he assigned values of $3,000,
$1,100, and $500, respectively. Yet in the exhibit presented to
this Court, petitioner assigned a value to the Nissan Maxima of
$4,000 and a value to the kayak and the Johnson 5-horsepower
motor together of $1,500. Petitioner further testified about a
Livingston Roberts painting worth between $8,000 and $10,000 for
which he paid $3,500. In his Exhibit 10-P presented to this
Court, he originally listed the value of the Livingston Roberts
painting as $10,000 but had crossed that out and put $3,500.[12]

Despite the noted circumstances, which we attribute to loss
of memory with the passage of time and petitioner's attempt on
Exhibit 10-P to mark destroyed items down from fair market value
to cost, we found petitioner's testimony to be candid and
forthright. We do not believe petitioner was attempting to
mislead this Court; rather, we believe petitioner had no
documentation for the property. However, petitioner's testimony
and the handwritten list do not fully satisfy petitioner's burden
of substantiation. See Lockett v. Commissioner, T.C. Memo. 2008-
5 (not allowing a casualty loss deduction when the taxpayer

---

[12]Petitioner assigned a value of $3,000 in Exhibit 10-P to
his book collection and testified to the same effect.

failed to prove the fair market value of the property or the adjusted basis of the property or to produce evidence that would allow a reasonable estimate).

The only evidence this Court has is petitioner's testimony and a list of items of property he claims he lost during the 2005 hurricane season. Petitioner did not produce any other documentation, photographs, or witnesses. Because petitioner did not provide all of the evidence required by section 1.165-7(b)(1), Income Tax Regs., in order to fully substantiate his loss, petitioner is not entitled to the entire casualty loss deduction of $36,250 that he claims for his 2005 tax year.

Petitioner asserts that what little documentation he did have about the damaged or destroyed property was itself destroyed by the hurricanes. If a taxpayer's records are lost or destroyed through circumstances beyond his control, he is entitled to substantiate the claimed deductions by use of other credible evidence. Lockett v. Commissioner, 306 Fed. Appx. at 466-467; Villareal v. Commissioner, T.C. Memo. 1998-420. But petitioner's unverified, undocumented testimony is not sufficient to support a $36,250 casualty loss deduction. However, this Court may approximate the deductible amount if the taxpayer establishes a deductible expense but is unable to substantiate the precise amount. Cohan v. Commissioner, 39 F.2d at 543-544.

The Court concludes that petitioner suffered damages to his property as a result of the 2005 hurricane season. We believe that a lot of petitioner's property was lost or damaged. And even though petitioner failed to meet substantiation requirements to be allowed the full $36,250 deduction, he has presented sufficient evidence to justify some relief under the Cohan rule.

The general rule is that the amount of a casualty loss deduction is the lesser of: (1) The fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty or (2) the adjusted cost basis of the property. Sec. 1.165-7(b), Income Tax Regs. On the evidence in front of us, we believe that petitioner's allowable casualty loss deduction should be $15,500 for his 2005 tax year.[13] See Popa v. Commissioner, 73 T.C. 130,

---

[13]Petitioner admits that he received approximately $500 from FEMA during 2005 and therefore this amount should be offset against his $15,500 casualty loss deduction. See sec. 165(a). Accordingly, petitioner will be entitled to a $15,000 deduction after offsetting the $500 he received from FEMA. The sec. 165(h) limitations do not apply in this case. See supra note 10.
We come up with $15,500 on the basis of petitioner's testimony and his Exhibit 10-P. Petitioner extensively testified about losing his car, kayak and outboard motor, paintings, and book collection. This Court also notes that even though petitioner did not specifically testify about them, he naturally lost the personal items such as clothing and furniture listed on his Exhibit 10-P. For the items petitioner both testified about and listed on Exhibit 10-P, we allow petitioner the lowest value attributed to that item. For the personal items not elaborated on in his testimony at trial, we allow petitioner half of the value listed on his Exhibit 10-P. Specifically, we give petitioner $3,000 for his car, $1,500 for the kayak and outboard
(continued...)

134 (1979) (holding that the taxpayer sustained a casualty loss but had not adequately documented the deductible amount and therefore was entitled to only 75 percent of the claimed loss); Heyn v. Commissioner, 46 T.C. 302, 309-310 (1966) (allowing the taxpayer a casualty loss deduction of $7,500 because it was clear that the taxpayer had sustained some loss as a result of the casualty even though the taxpayer had failed to clearly or precisely substantiate the amount); Clapp v. Commissioner, 36 T.C. 905, 908 (1961) (rejecting the taxpayer's contention that the casualty loss was $4,000 but using the Court's best judgment to find that the loss due to the casualty was $800), affd. 321 F.2d 12 (9th Cir. 1963).

IV. Additions to Tax

Respondent bears the burden of production with regard to the additions to tax. See sec. 7491(c); see Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To meet his burden, respondent must produce sufficient evidence establishing that it is appropriate to impose the determined additions to tax. See Higbee v. Commissioner, supra at 446. However, respondent does not have to produce evidence of reasonable cause, substantial authority, or lack of willful neglect. Id.

---

13(...continued)
motor, $3,500 for the Livingston Roberts highwayman painting, $2,000 for the other listed paintings, $3,000 for his book collection, $2,000 for his furniture, and $500 for clothing.

A.  Section 6651(a)(1)

Generally, "any person made liable for any tax * * * shall make a return or statement according to the forms and regulations prescribed by the Secretary."  Sec. 6011(a).  Section 6651(a)(1), in the case of a failure to file a return on time, imposes an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent in the aggregate. The penalty will not apply if it is shown that such failure is due to reasonable cause and not due to willful neglect.

Petitioner did not file his 2004, 2005, or 2006 tax return. Further, petitioner has not presented any evidence that his failure to file was due to reasonable cause and not willful neglect.  Respondent has met his burden of production, and accordingly, we sustain the additions to tax under section 6651(a)(1) for petitioner's 2004, 2005, and 2006 tax years.  See Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006) (evidence that the taxpayer did not file his income tax return was sufficient to satisfy the IRS' burden of production for the section 6651(a)(1) addition to tax), affd. 521 F.3d 1289 (10th Cir. 2008).

B.  Section 6651(a)(2)

Section 6651(a)(2) provides for an addition to tax of 0.5 percent per month up to 25 percent for failure to pay the amount

shown on a return unless it is shown that such failure is due to reasonable cause and not due to willful neglect.[14]

> The Commissioner's burden of production with respect to the section 6651(a)(2) addition to tax requires that the Commissioner introduce evidence showing that a return showing the taxpayer's tax liability was filed for the year in question. In a case such as this where the taxpayer did not file a return, the Commissioner must introduce evidence that an SFR [substitute for return] satisfying the requirements of section 6020(b) was made. See <u>Cabirac v. Commissioner</u>, * * * [120 T.C. 163 (2003)]. * * *

<u>Wheeler v. Commissioner</u>, <u>supra</u> at 210.

Under section 6651(g)(2), a return prepared by the Secretary pursuant to section 6020(b) is treated as a return filed by the taxpayer for the purpose of determining the amount of an addition to tax under section 6651(a)(2). To constitute a section 6020(b) return, "the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." <u>Spurlock v. Commissioner</u>, T.C. Memo. 2003-124.

Respondent and petitioner stipulated that substitutes for returns were filed on petitioner's behalf for his 2004, 2005, and 2006 tax years. Petitioner did not pay his tax for his 2004, 2005, or 2006 tax year. Respondent has met his burden of

---

[14]The sec. 6651(a)(1) addition to tax is reduced by the amount of the sec. 6651(a)(2) addition to tax for any month (or fraction thereof) to which an addition to tax applies under both sec. 6651(a)(1) and (2). See sec. 6651(c)(1).

production with respect to the section 6651(a)(2) additions to tax.  Further, petitioner did not present any evidence that his failure to pay was due to reasonable cause and not willful neglect.  Therefore, we will sustain the additions to tax under section 6651(a)(2) for petitioner's 2004, 2005, and 2006 tax years.

   C.   Section 6654(a) Additions to Tax

   Respondent determined that petitioner was liable for additions to tax under section 6654(a) for petitioner's 2005 and 2006 tax years.  Section 6654(a) imposes an addition to tax where prepayments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute.  However, the addition to tax will not apply if petitioner shows that one of the several statutory exemptions applies.  See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

   "[R]equired installments" of estimated tax are due at four times during the year and each is 25 percent of the "required annual payment."  Sec. 6654(c)(1), (d)(1)(A).  For an individual taxpayer whose adjusted gross income for the taxable year is $150,000 or less, a "required annual payment" is equal to

- 21 -

the lesser of--

   (i) 90 percent of the tax shown on the return for
the taxable year (or, if no return is filed, 90 percent
of the tax for such year), or

   (ii) 100 percent of the tax shown on the return of
the individual for the preceding taxable year.

Clause (ii) shall not apply if the preceding taxable year
was not a taxable year of 12 months or if the individual did
not file a return for such preceding taxable year.

Sec. 6654(d)(1)(B).

To meet his burden of production with regard to the section

6654(a) addition to tax, respondent must at a minimum produce

evidence necessary to enable the Court to conclude that

petitioner had a required annual payment for 2005 and 2006.  See

Wheeler v. Commissioner, supra at 211.

Respondent has met the burden of production with respect to

the section 6654(a) additions to tax.  Petitioner did not make

his required estimated tax payments for either 2005 or 2006.  He

also does not qualify for any of the exceptions listed in section

6654(e).  Because petitioner failed to file Federal income tax

returns for 2004 and 2005, petitioner's required annual payment

of estimated tax was 90 percent of his tax for each year.  See

Wheeler v. Commissioner, supra at 211-212; see also Rivera v.

Commissioner, T.C. Memo. 2009-215; Walzer v. Commissioner, T.C.

Memo. 2009-200.  We therefore sustain respondent's additions to

tax under section 6654(a) for petitioner's 2005 and 2006 tax

years.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.